MAVIS E. SMELZER, an Infant, by ELIZABETH M. NORTH, Her Guardian ad Litem, Plaintiff, *v.* TRACY SMELZER, Defendant.

Supreme Court, Albany County, April 25, 1933.

*Harold J. O' Keeffe*, for the plaintiff.

No appearance for defendant.

SCHENCK, J. This is an action brought to annul a marriage on the ground of fraud, the plaintiff contending that prior to the marriage defendant represented to her that he had sufficient money to support her in the manner and fashion that she was accustomed to. It is alleged that defendant stated to plaintiff that he was possessed of securities of considerable value and that he was to share in his grandfather's estate. Relying on these

representations, plaintiff claims she consented to the marriage, which occurred August 9, 1931. The action is not contested by the defendant.

The only testimony bearing upon the issues is that of the plaintiff, who, sworn in her own behalf, testified that she had known the defendant about four months prior to the marriage, during which period he asked her to marry him, stating to her that he had sufficient money " by which to keep me in the way I had been used to; that he had stocks and bonds of large value, and he was to share in his grandfather's estate; and we made an agreement that I was not to live with his mother and he was not to come to live with mine." Plaintiff testified further that in the spring following the marriage, the defendant asked her to come and live with his mother because he did not have enough money to support her and that the securities that he had were of no value and that he had failed to share in his grandfather's estate.

Plaintiff's action is apparently based upon the decision of the Court of Appeals in *Shonfeld* v. *Shonfeld* (260 N. Y. 477), where it was held that if either party consents by reason of fraud, there is no reality of consent and the marriage is voidable. The facts in the *Shonfeld* case, however, differ very materially from the facts in this action and, as it is there pointed out, the court should meet each case as it arises and apply to the defendant's conduct the test of fair and conscientious dealing. Marriage, so far as its validity is concerned, is a civil contract to which the consent of parties capable in law of making the contract is essential. In the *Shonfeld* case the marriage was annulled on the ground of fraud by a divided court, three judges dissenting. There the action for annulment was brought by the husband, who testified that defendant stated that she had $8,000 which would be available to plaintiff to start a proposed business. Defendant refused to furnish any money before the marriage. Immediately after the marriage plaintiff discovered that the defendant did not have and never had had any such money or means of getting it. It is readily seen that the present action presents no such facts or circumstances. Here the defendant has made what may be characterized as general statements. It may be that he misstated his financial condition, although there is nothing in the testimony to indicate that he may not have had at the time he made such statements securities of great value, nor does it appear that he may not have believed at that time that he was to receive money from his grandfather's estate. The primary consideration in this case is the materiality of the representation viewed in the light of all of the circumstances by an ordinarily prudent man. The court, applying this rule in

the *Shonfeld* case, held that the misrepresentation there " was not a mere exaggeration or misstatement of her means or prospects, which might or might not be an incentive to marriage," but that it was " a definite statement of an existing fact without which, as defendant clearly understood, no marriage was presently practicable." But in that case, as Judge CRANE in his dissenting opinion points out, the marriage was a mere matter of bargain and sale; that the woman had bought the man for $6,000 and because she failed to have the money, the man sought to have the marriage annulled. We have no such situation in the instant case. Here the plaintiff, about nineteen years of age, and the defendant, about twenty-one, who had known one another for a period of about four months, decided to get married. It may well be that the defendant exaggerated the extent of his financial worth and misstated his means or prospects, but such representations as I have been able to fairly infer from the testimony of the plaintiff fall far short of being of such materiality as would justify an annulment, nor can I find that they were such representations as would deceive an ordinarily prudent person. If, under a state of facts such as presented in this case a plaintiff upon her own testimony can have this marriage annulled, a very dangerous precedent would be created. It would indicate an easy method for an unscrupulous person to void a marriage, where that person had become disappointed as to the material wealth of the other party to the contract. It would be far easier for a disappointed spouse to obtain an annulment than to obtain a divorce under the laws of this State, where the innocent party is prohibited generally from testifying. To dissolve a marriage, the fraud must relate to something vital. It must be more than a misstatement of general financial condition. The false representations must be so material that it may be clearly found that they would have influenced the consent of a person of average prudence and intelligence. (*Lapides* v. *Lapides*, 254 N. Y. 73; *Beard* v. *Beard*, 238 id. 599.) All of the representations alleged to have been made by this defendant fall far short of being so material as to induce a prudent person to give consent. The proof is not strong and convincing, nor do the representations go to a vital part of the marriage contract. It has not been made to appear to me that the facts alleged to have been stated by the defendant were of sufficient weight to induce any reasonable person similarly situated to wholly rely upon them.

The complaint is dismissed, without costs.